## SUPREME COURT.

### WILLIAM F. McCARTY, appellant agt. ALFRED EDWARDS, respondent.

Actions seeking *equitable relief* are to be *tried by the court;* a party is not enti-tled as a matter of right to have the issues of fact in *such actions* tried by a *jury.*
After the time to settle the issues in a cause asking *equitable relief,* and for a money demand, to the settlement of which issues the plaintiff has lost his right, on the trial he is not entitled to have the issues settled instanter, or to *amend* his *complaint* instanter, and strike out of the prayer all except the money demand, and to proceed to a jury trial immediately, thus changing essentially the nature of the action and the mode of trial, apparently for the sole purpose of getting the cause before a *jury;* nor to *put the cause over the circuit* to enable him to move to amend the complaint and settle the issues, without showing a sufficient reason therefor. These matters are addressed to the *discretion* of the judge at the cir-cuit, and cannot be reviewed at general term.

McCarty agt. Edwards.

A non-resident *party* may be examined *on commission* as a witness in his own behalf.

It is not a valid objection that *cross-interrogatories* in a *commission* offered in evidence are not all answered, where it appears that some of them in whole or in part are answered by *reference to previous answers*, the latter being full and explicit.

Several objections were taken by the plaintiff in this case, to the *commissions* introduced by the defendant in evidence, which are specifically examined and passed upon by the court in their opinion; but with the remark, however, that they had seldom seen any objections to testimony *less specific* or *less significant* than these appeared to be, as presented on the bill of exceptions; and were inclined to think that all of them might with great propriety have been *summarily condemned for that reason*.

*Albany General Term, December,* 1861.

GOULD, HOGEBOOM and PECKHAM, *Justices.*

THIS was an action in equity, tried at the Albany September circuit, 1860, before his honor Justice GOULD. The decision was in favor of the defendant, upon which judgment was entered for the amount of his costs and disbursements. From this judgment the plaintiff appeals to the general term.

The action was commenced by service of summons and complaint on the 27th of July, 1858. The plaintiff was an engineer, engaged in running a locomotive on the New York Central Railroad. The defendant was an attorney-at-law, residing and practicing his profession, first at Clinton, and afterwards at Davenport, in the state of Iowa.

The summons was in form for "the relief demanded in the complaint," and not for the recovery of money. The complaint (fol. 4) alleged in substance, that on the 8th of April, 1856, the plaintiff delivered to the defendant at Albany, the sum of $335, which the defendant, as the agent of the plaintiff, was to take west with him, and invest the same, for and in the name of the plaintiff, in government lands in the state of Iowa, for which service he paid the defendant $35 in advance. That early in May following, plaintiff received a letter from the defendant, dated Clinton, April 28, advising a location in Minnesota, instead of Iowa, as at first contemplated, and that he would bring or

send by mail, to plaintiff, the certificate of location, as soon as the same should be effected. That under date of the 27th of June, 1856, he received from defendant a second letter, to the effect that an advantageous location of land for plaintiff had been selected, and that by calling at the office of Mr. Meads in Albany, in the course of a few days, he would receive a certificate of location. That, notwithstanding such assurances and the original undertakings of the defendant, the defendant had theretofore neglected and refused, and still neglected and refused to deliver to plaintiff the said certificate of purchase and location, or any evidence of his having invested plaintiff's money for his benefit or on his account in Iowa, Minnesota or elsewhere, or refund the money.

The complaint then concluded with a demand for judgment. That the defendant be compelled to surrender and deliver to the plaintiff, said alleged certificate of location or title to the land alleged to have been purchased for the plaintiff, or in case defendant had not made such investment or purchase, then that the plaintiff have judgment for the $335, with interest from the 8th of April, 1856, with costs.

The answer of the defendant denies the material allegations of the complaint, and sets forth the facts as they were claimed by the defendant to exist, and which constituted his defence.

On the trial before Judge GOULD, various rulings were made by him in regard to the mode of proceeding, and the admission and rejection of evidence, which were duly excepted to, and which are sufficiently stated in the opinion of the court. A large mass of testimony, mostly on commission, was introduced, which need not be given in detail, after which the judge made the following findings of fact and law :

That on the 8th day of April, 1856, at the city of Albany, the plaintiff paid to the defendant the sum of three hun-

dred and thirty-five dollars, and that the defendant at the same time executed and delivered to the plaintiff an instrument in writing, in the words and figures following, and being the contract then entered into between the defendant and the plaintiff, to wit :

" Received, Albany, April 8th, 1856, from Wm. F. McCarty, three hundred and thirty-five dollars, to be given to' agents in Iowa, and to be invested under my direction in government lands. (Signed) ALFRED EDWARDS."

That in pursuance of such contract defendant, with no unnecessary delay, did deposit in the hands of George L. Nichols & Co., on the 17th day of May, 1856, and in current funds, the sum of three hundred dollars, with instructions to invest the said sum in the purchase of government lands, in the name of and for the benefit of plaintiff, and that the said George L. Nichols & Co. were then residing and doing business as general land agents at Davenport, in the state of Iowa, and were then proper and responsible agents for that purpose.

That the plaintiff was duly informed by defendant of what had been done by the defendant in the premises, and assented thereto by making no objection.

That the money thus deposited by defendant with said agents has neither been invested by them, as directed, nor has any part thereof been prepaid by said agents either to defendant or plaintiff.

That said agents, George L. Nichols & Co., have become and are insolvent; that defendant has used all due diligence to have such investment made by said agents, or to obtain a return of said money to plaintiff, but without effect; that defendant has substantially, and in all respects, complied with his said agreement of April 8th, 1856, and that there has been no default by defendant in respect thereto.

That the sum of $35, retained by the defendant, of said $335 received by defendant of plaintiff, has been expended

by defendant in and about his agency under said agreement, and is a reasonable sum to be allowed to and retained by defendant, for his expenses and services in said matter.

The said judge further found, as conclusions of law, that defendant has fully performed on his part, said contract of April 8th, 1856; that plaintiff is not entitled to the relief demanded in his complaint in this action; that plaintiff is not entitled to have or recover judgment against the defendant for any sum, by reason of the matter in said complaint alleged, and that the defendant is entitled to have judgment against the plaintiff for his costs and disbursements in said action.

The plaintiff's counsel duly excepted to the findings of fact and conclusions of law of the said judge; and thereupon, by direction of the judge, judgment was, on the 9th day of October, 1860, rendered for the defendant for his costs, ($106.68.) The plaintiff appealed to the general term.

> HENRY SMITH, *for plaintiff, appellant.*
> CLARK B. COCHRANE, *for defendant, respondent.*

By the court, HOGEBOOM, Justice. The plaintiff made several propositions and objections on the trial of the cause, which were overruled. It will be convenient to consider them in their order:

1. Plaintiff asked that the issues of fact be tried by a jury. He was not entitled to this as a matter of right, (*Code*, §§ 253, 254.) It was, therefore, a matter of *discretion*, and not reviewable. The discretion has not been abated. The action seeks equitable relief, and such are to be tried by the court. (*Cheesebrough* agt. *Houck*, 5 *Duer*, 125; *Wilson* agt. *Forsyth*, 16 *How.*, 448; *Moffatt* agt. *Van Doren*, 4 *Bosw.*, 610.)

2. The further applications then made by the plaintiff— *to settle issues instanter*, after the time to settle issues had

elapsed, and the plaintiff had lost his right thereto ; *to amend the complaint instanter, and strike out of the prayer all except the demand to recover $335 and interest, and proceed to a jury trial immediately*—thus changing essentially the nature of the action and the mode of trial, and apparently for the sole purpose of getting the cause before a jury ;—*to put the cause over the circuit to enable the plaintiff to move to amend the complaint or settle issues*, without any sufficient reason being given therefor, without any allegation or proof of surprise or want of preparation for the trial, were all, I think, properly overruled by the judge at the circuit, and were addressed to a discretion with which we cannot interfere.

3. The plaintiff also made several objections to the defendant's evidence, the most important of which I will notice :

1. " Plaintiff objected to the reading of letters addressed by defendant's agents to him." The objection amounts to nothing. It does not specify what *letters*, or what *agents*, or *why* the letters would be improper. If the objection refers to the letters of Nichols & Co. to defendant, it might be argued with some force that they were *plaintiff's* agents. If otherwise, their letters might, in a certain aspect of the case, be proper, as showing good faith on the part of the defendant, the course he took in investing the plaintiff's money, and reasons for delay in not prosecuting them for the money.

2. Plaintiff objected to the reading of defendant's testimony taken under commission : 1. " Because there is no authority to examine a party by commission, granted Feb. 18, 1859 ;" we have held the reverse in *Bigelow* agt. *Mallory*, (17 *How.*, 427 .) 2. " Because the cross interrogatories are not all answered." On inspecting them, we find they are all answered—some of them, it is true, in whole or in part by reference to previous answers. This I am inclined to think not objectionable if the previous answers are full

and explicit, precise and definite, and the reference to them exact and specific. But whether so or not, no such objection was taken, nor would the court imagine that such a point was intended by the language in which the objection was couched. We cannot give effect to such a strained construction of language. (*Valton* agt. *National Fund Life Insurance Co.*, 20 *N. Y.*, 34.)

3. Plaintiff objected to the answer to the 4th interrogatory " as a conclusion of the witness."

On examining the answer, we find that it contains more than a page of printed matter, and a large number of specific facts which cannot, in any sense, be regarded as mere opinions or conclusions of the witness. The objection is, of course, wholly unavailable. It embraces matter wholly unobjectionable, and its generality and indefiniteness would be good cause for overruling it.

4. Plaintiff objected to the answer to the 8th interrogatory because it is hearsay and secondary, proving his declaration in his own favor.

A portion of this answer, which goes to show the efforts made by defendant to invest the plaintiff's money, and thus to resist the imputation of bad faith, delay and negligence on his part as the plaintiff's agent, was certainly pertinent and proper. Some of the letters referred to in this answer were lost and unable to be found after diligent search, and therefore not necessary to be produced. The objection, therefore, that it was secondary, would be unavailable to that part, and hence unavailable as to the whole, because embracing unobjectionable matter—unavailable also for the same reason, because a portion of the parol testimony was proper.

5. Plaintiff " objected to that portion of the answer to the 9th interrogatory, which states what defendant said in conversation with Nichols, and what he wrote to Nichols, because his reason for writing the letter is not a fact, and the letter itself is not produced."

McCarty agt. Edwards.

The answer to the 9th interrogatory embraces about two pages of printed matter, and after perusing it, I do not discover that it states *any* thing of "what defendant said in conversation with Nichols," nor *any* thing "that he wrote to Nichols." The objection, therefore, seems to be without any point, if indeed we were authorized to give any consideration to an objection so general and indefinite as applied to an answer two pages in length. Some *letters* are mentioned in that answer; some written by the defendant to the plaintiff, which are produced; some written by Nichols & Co. to the defendant, one of which was produced; another not produced, the contents of which the witness did not disclose beyond alluding to a fact stated in it, that they would be able to enter plaintiff's land in a few days, which was a fact defendant would have a right to state on information, as a probable motive for the contents of his letter to the plaintiff, written shortly afterwards.

An objection is also taken to this answer, because it states that Nichols became embarrassed by the erection of a large block of buildings. I think this was not wholly irrelevant, inasmuch as it tended to show why defendant had not invested the plaintiff's money, and why, if not invested, he had not been able to get it back from Nichols; and why he wrote to plaintiff, requesting liberty to sue Nichols and attach his property.

6. Plaintiff " objected to part of the 14th interrogatory." This interrogatory is the general and usual one attached to interrogatories sent by commission. The objection is pointless, if not, in the manner it is made, ridiculous.

7. Plaintiff objected to the evidence of the other witnesses taken on commission, that the interrogatories are not all answered. This is incorrect in point of fact, and has been already fully considered.

8. Plaintiff further objected " to the 8th, 9th and 11th interrogatories as immaterial, and the answers to the same."

The 8th interrogatory related to letters written by defendant to plaintiff relative to the embarrassment and insolvency of Nichols & Co., and to the fact of ownership of any property by Nichols & Co., out of which plaintiff's debt could be made, and cannot be said to be wholly immaterial, as they tended to explain and justify the defendant's conduct, and repel the imputation of bad faith, negligence and delay, contained in the plaintiff's letters to the defendant.    The answers to this interrogatory are pertinent for the same reason.

The 9th interrogatory inquired as to any offer made by Nichols to convey to plaintiff 240 acres of government land in Minnesota.    This was also proper or admissible, as explanatory of defendant's conduct, to whom Nichols made the offer, and who communicated it to the plaintiff, and as tending to show diligence and activity on the part of the defendant in securing plaintiff against loss.    The answers thereto are also proper for the same reason.

The 11th interrogatory was the usual general one, requesting the witness to state any other matter within his knowledge, beneficial to the defendant, and embraced within the issues in the action.    Neither this nor any pertinent answers to it, (and so far as given they seem to be pertinent,) can with any propriety be said to be *immaterial*.

I have seldom seen any objections to testimony less specific or less significant than these appear to be, as presented on the bill of exceptions; and I am inclined to think that all of them might with great propriety have been summarily condemned for that reason.    But on analyzing the testimony, with a view to see if the plaintiff would suffer from such a disposition of his objections, I am unable to discover, so far as our attention has been drawn to it, that the judge excluded any testimony which was material to the case, or admitted any erroneously, which tended to prejudice the plaintiff's case.

The weight of testimony on the merits is with the defendant, and appears to have abundantly justified the conclusions at which the judge arrived.

It is obvious that the plaintiff entertained an erroneous impression of the nature and legal effect of the contract between the parties.

The receipt of April 8, 1856, given by the defendant to the plaintiff, was in the nature of a contract between the parties, and was obligatory upon them. (*Creery* agt. *Holly*, 14 *Wend.*, 26 ; *Eggleston* agt. *Knickerbocker*, 6 *Barb.*, 458 ; *Wolfe* agt. *Myers*, 3 *Sandf.*, 7 ; *Niles* agt. *Culver*, 8 *Barb.*, 205.) It expressed the terms on which the defendant received the money, to wit : to be given to agents in Iowa, and to be invested in government lands under defendant's direction. This negatived the idea that he was to make the investment in person, or to be responsible for a neglect to do so on the part of others, provided he, as the agent of the plaintiff, exercised proper care and diligence in the selection of agents and in directing the investment. I am unable to see that he was guilty of laches or misconduct in this respect. It would seem that the *agents* intended by the parties, were mentioned at the time this writing was entered into, and they, or one of them, did reside in Iowa, although they did business also in Minnesota. These were the persons into whose hands the plaintiff's funds were promptly placed by the defendant.

It is a mistake to suppose that the contract required the investment to be made in Iowa lands. Such is not the construction to be given to it ; and if it was the place of location, it was changed from Iowa to Minnesota, by the consent of the plaintiff.

It is matter of regret that the plaintiff's funds have been lost, but it appears to have been without the defendant's fault.

I think the findings of the court below were justified by

the evidence ; and if it were a case of doubtful testimony, effect must be given to the principle which forbids a reversal after a fair trial before a competent tribunal hearing the testimony, and more able than any other to estimate its due weight and credibility.

The judgment of the circuit court should be affirmed, with costs.